JUSTICE HARRISON
concurring in part and dissenting in part.
I concur and dissent from the majority opinion, particularly with issue 2: whether the District Court abused its discretion when it ordered that, after his release from prison, the father’s visitation with the child would be supervised by a maternal relative. The parents of the father, the Romos, argue his visitation should not be restricted.
The record indicates that not only was the father a felon at the time of the hearing, but prior to that he had an unsavory record as a juvenile, including numerous incidents which would have been charged as felonies had he been older. The record also contains information that the father had been confined at the Miles City institute for juveniles and had threatened the mother of his child as well as her boyfriends. In addition, the record indicates the father has attempted suicide and has a history of violence.
*349 Since the hearing, the mother has moved some 600 miles away from Wolf Point, Montana, and is now living in Pablo, Montana, with her mother and aunt. In objecting to the father’s visitation in Pablo, it is quite understandable that the mother and aunt would not particularly welcome the father in their home while supervising him with the child. I would hold that the corut did abuse its discretion when it required the father to have any visitation in Pablo.
After reading the record, I am troubled also that the father’s and grandparents’ interest in the child was not apparent until over a year after the child was born. The record indicates that no presents were ever given to the child until after this action was commenced and no support was given to the mother who, it appears, was either 15 or 16 when the child was born. While the record is devoid of any reference as to where the mother and child received their financial support, it might well be that it had to have come either from the mother’s parents or from welfare. To me, the sudden interest in the child a year after her birth and after the father was sent off to the penitentiary raises some question as to whether the child’s best interest is served until the father establishes a record of non-violence.
Further, the record indicates that a clinical psychologist was hired to submit an evaluation of the appropriateness of the father’s visitation with the child. The psychologist reported: “I see nothing contraindicatory [sic] about his having visitation with his child, be it in prison or not. Indeed, visitation rights would seem like a positive thing at this point.” The psychologist arrived at this conclusion after telephone conversations with the father while in prison, yet he had never seen the father nor the mother or the child — I find it unusual that this recommendation would hinge on mere telephone conversations.
Finally, it is my view that if these visitations are to be carried out, I believe the mother’s wishes and her situation — 600 miles away from where most of this has occurred — be given more study. A period of time should pass allowing the child to grow before set periods of visitation by the father are allowed.